493 P.2d 536

**STATE of Arizona, Appellee,**

v.

**Randy N. YURESKO, Appellant.**

**No. I CA–CR 340.**

Court of Appeals of Arizona,
Division 1,
Department A.

Feb. 9, 1972.

Rehearing Denied March 9, 1972.

Review Denied May 9, 1972.

the two other occupants of his apartment. The agents pretended to be smoking in order not to arouse suspicion. At this point, Officer Bertocchi identified himself as a state narcotics agent and informed the three occupants that they were under arrest.

Gary attempted to escape and became involved in a struggle outside the apartment with Officer Dowd over a gun that was present in the apartment when the three agents entered. Gary was subdued after a brief scuffle and after returning him to the apartment, Officer Dowd went to his car and radioed for assistance.

Upon returning to the apartment, Officer Dowd for the first time noticed Randy N. Yuresko, herein referred to as the defendant. When Officer Dowd reentered the apartment the defendant was standing inside the apartment next to the kitchen door observing Officers Brehm and Bertocchi conducting a search of Gary Yuresko and his two friends. During the period of time Officer Dowd was observing the defendant (approximately twenty seconds), the latter placed his right hand in his right jacket pocket in a manner similar to a person assuming a casual stance with one hand in his pocket.

It was at this point that Officer Dowd approached the defendant and asked him what he was doing at the apartment. Randy Yuresko replied that he had come to see his brother, Gary. Officer Dowd then asked the defendant to remove his hand from his jacket and when no response was forthcoming, the officer removed the defendant's hand, placed him against the wall and conducted a search for weapons. While so searching the defendant, Officer Dowd felt a hard object in the defendant's right hand shirt pocket which he suspected could have been a weapon. When this object was removed from the defendant's pocket by the officer, it turned out to be a soft pack of Marlboro cigarettes. As the officer was returning this cigarette package to the defendant's pocket, he noticed hand-rolled cigarettes in it which were then

McCall & Mason by Jack E. McCall, Phoenix, for appellant.

Gary K. Nelson, Atty. Gen. by William P. Dixon, Asst. Atty. Gen., for appellee.

STEVENS, Presiding Judge.

On the evening of 21 November 1969, Officer Dowd and two other narcotic agents who were in the employ of the Arizona State Department of Public Safety went to the residence of Gary W. Yuresko, the appellant's brother, at 1920 North 22nd Street in Phoenix, Arizona. Subsequent to some conversation with Gary concerning a sale by him to the agents of some opium, he and the three agents entered Gary's apartment.

During the course of the conversation in the apartment a hand-rolled cigarette was passed around and smoked by Gary and

confiscated and later identified as marijuana cigarettes.

On 24 November 1969, the defendant was charged with the offense of possession of marijuana. A.R.S. § 36–1002.05. Subsequent to a 4-day preliminary hearing on the 8th, 9th, 12th and 15th days of December, the defendant was held to answer. The information was filed and the defendant was arraigned at which time he pleaded not guilty.

The defendant subsequently waived his right to be tried within 60 days and filed a motion to suppress the evidence, the hand-rolled marijuana cigarettes. The motion was denied. On 9 July 1970 the defendant waived his right to a jury trial and stipulated that the case could be tried by the court on the basis of the preliminary hearing transcript. The defendant was found guilty on 10 July 1970. He was adjudged guilty and sentenced on 27 July 1970. A notice of appeal was timely filed on 6 August 1970.

There are two questions presented for our consideration on appeal. First, whether the search of Randy Yuresko was reasonably justified at its inception under the stop and frisk standards set forth in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed. 2d 889 (1968) and Sibron v. New York, 392 U.S. 40, 88 S.Ct. 1912, 20 L.Ed.2d 917 (1968), and second, assuming *arguendo* that the stop and frisk search of the defendant was justifiable at its outset, did the extent of the search, i. e., looking into a soft pack of Marlboro cigarettes, bear some reasonable relationship in scope to the circumstances which justified the search in the first place. The resolution of these issues will of course have a direct bearing on the admissibility of the marijuana cigarettes found on the person of the defendant.

## THE SEARCH

When an officer has occasion to question or confront a citizen, he may under certain circumstances make a self-protective frisk of the citizen even though he does not have probable cause to arrest.

Amacher v. Superior Court, 1 Cal.App.3d 150, 81 Cal.Rptr. 558 (1969). The validity of this type of procedure is determined by examining the circumstances with which the searching officer was faced.

In the case at bar, Officer Dowd on re-entering first saw the defendant standing in the kitchen of the apartment in which the two other agents were conducting a search. After observing the defendant for approximately twenty seconds, Officer Dowd saw the defendant place his right hand in the right pocket of his jacket. Officer Dowd had just returned from the outside where he had gone to radio for assistance after a struggle with the defendant's brother over a gun. The defendant was then asked what he was doing in the kitchen and told to take his hand out of his jacket. When he refused to do so, the search which is the subject of this opinion was conducted.

These facts are reflected in the examination of Officer Dowd during the preliminary hearing.

"Q Sir, you stated that you first saw Randy Yuresko, and he was standing where?

"A In the kitchen, inside the kitchen door.

"Q And how long did you observe him before you put your hands on him and commenced to make a search?

"A Oh, approximately 20 seconds, I would say.

"Q What did you observe him do in that time?

"A He was looking into the living room where Officer Bertocchi, and Ron Brehm were conducting a search of the other suspects.

\* \* \* \* \* \*

"Q Did you consider Mr. Yuresko a danger to yourself or to your fellow officers?

"A Yes, I did.

"Q On what basis?

"A On the basis I just had gotten done with one fight over one gun.

"Q That was not with Mr. Yuresko?

"A That's correct.

"Q In addition to the fact that you had an altercation with another individual over a gun, what about Mr. R. Yuresko led you to believe he was a danger to your person?

"A He refused to remove his hand from his pocket.

"Q Was there anything else?

"A His position in the kitchen and watching what he was going to do.

"Q What about his position in the kitchen is significant?

"A He was standing watching the other two officers conduct the search.

"Q Just standing there watching?

"A Yes, sir.

"Q Was he making any threatening gestures?

"A Not that I saw.

"Q Now, how long did you observe him before you saw him put his hand in his pocket?

"A Not very long.

"Q You stated it was a 20-second span until you began to search. Was half that time before he put his hand in his pocket?

"A It could have been, yes.

"Q And how long after he put his hand in his pocket did you ask him what he was doing there?

"A It was almost immediately.

"Q Or another two or three seconds?

"A It would be almost immediately.

"Q And how long passed until you asked him to take his hand out his pocket?

"A Oh, it was probably in the same sentence just after he replied why he was there.

"Q How long did you wait before you began to search him then?

"A Just a short time. Just after I asked him to take his hand out of his pocket again and he didn't do it, and I took it out for him."

Officer Dowd also testified that at the time of the search the package of cigarettes found in the defendant's shirt pocket felt hard and that it could possibly have been a knife.

This Court has reviewed this testimony in the light of the standards promulgated by Terry as justification for the type of search presented by the case at bar. Our review indicates that:

"* * * in justifying the particular intrusion the police officer must be able to point out specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." Terry v. Ohio, 392 U.S. at 21, 88 S.Ct. at 1880.

█ It is our opinion that the record reflects that Officer Dowd's search of the defendant served the purpose of protecting himself and the other officers who were nearby. We also believe that "specific and articulable" facts have been presented which justified and warranted the invasion of the defendant's personal security by searching him for weapons.

The circumstances of this case involve the immediate interest of a police officer in taking steps to assure himself that the person with whom he is dealing is not armed with a weapon that could unexpectedly and fatally be used against him. We cannot blind ourselves to the need for law enforcement officers to protect themselves and other potential victims of violence in situations where they may lack probable cause for an arrest.

"When an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others, it would appear to be clearly unreasonable to deny the officer the power to take necessary measures to determine whether the person is in fact carrying a weapon and to neutralize the threat of physical harm." Terry v. Ohio, 392 U.S. at 24, 88 S.Ct. at 1881.

Inasmuch as it is our conclusion that Officer Dowd's apprehension was reasonable

under the facts of this case, we hold that the subsequent search of the defendant was justifiable at the time of its inception.

### SCOPE OF THE SEARCH

■ Although the self-protective frisk of the defendant was justified, we are still faced with the question as to the scope of such a search. We expressly refrain from expressing an opinion as to the validity of the seizure of the cigarettes had it been necessary for Officer Dowd to first open the cigarette package before he could observe the handrolled cigarettes.

The record shows that the marijuana cigarettes discovered by Officer Dowd were in plain view at the time when they were first noticed during the search of the defendant.

"Q What happened next, Officer Dowd?

"A At this time I told him to turn around and put his hands up against the wall.

"Q What did you do next?

"A Proceeded to search for weapons.

"Q What if anything did you find, sir?

"A I found a package of Marlboro cigarettes in his shirt pocket. It would be his right front shirt pocket.

"Q What if anything did you do with this package of Marlboro cigarettes?

"A Well, when I felt them I didn't know what they were, so I took them out. I saw that they were cigarettes. I started to put them back, and as I started to put them back in the pocket, I noticed the handrolled cigarettes in there."

Of the many possible situations recognized by the courts as not constituting unreasonable searches, the one most appropriate to this case and the facts which gave rise to it appears to the open-view doctrine.

"Under this doctrine a peace officer who has reached a location by lawful means and who, from this location, can, by the mere act of looking, observe what he believes to be contraband, is '* * * not required to close (his) eyes and need not walk out and leave the article where (he) saw it.' Davis v. United States, 327 F.2d 301, 305 (9 Cir., 1964)." State v. Pine, 8 Ariz.App. 430, 434, 446 P.2d 940, 944 (1968).

As we noted previously, the initial intrusion of Officer Dowd upon the person of the defendant was justified. Since the investigating officer noticed the handrolled cigarettes which were later identified as marijuana from a position of observation in which he was legally entitled to be, it is the opinion of this Court that the confiscation of these cigarettes was not the result of the confiscating officer having exceeded the permissible scope of a pat down search for weapons.

The judgment and sentence of the trial court are

Affirmed.

CASE and DONOFRIO, JJ., concur.