Argued November 27, 1973, affirmed January 21, reconsideration denied February 27, petition for review denied March 19, 1974

# STATE OF OREGON, *Appellant, v.*
# JAMES EVANS, *Respondent.*
### 517 P2d 1225

*John W. Burgess,* Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

*Robert C. Cannon,* Deputy Public Defender, Salem, argued the cause for respondent. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Before SCHWAB, Chief Judge, and THORNTON and TANZER, Judges.

TANZER, J.

This is an appeal by the state from a circuit court order granting defendant's motion to suppress as evidence a plastic bag of marihuana seized from defendant's shirt pocket.

On March 16, 1973, Officers Self and Straughan of the Washington County Sheriff's Department were in their police car patrolling Banks. At 3:17 a.m., while in an area where there had been "heavy vandalism," the officers saw a car stop and let defendant and a companion out. Officer Self thought that he recognized one of the individuals as someone who had recently been jailed for narcotics activity, so the officers pulled their car alongside defendant and his companion to "talk to them." As they pulled their car even with the two pedestrians, Officer Self testified that they turned on their roof-mounted, diagonal "alley light" to illuminate the area. As Officer Self rolled down his window and asked defendant and his companion for identification, he realized that he had been mistaken in thinking that he knew one of them. Nevertheless, due to the hour, the officers decided to persist in their request for identification.

Defendant identified himself by means of a draft card and his companion, Hernandez, produced an Oregon driver's license. While Officer Self checked the identification, Officer Straughan got out of the car and walked around the car to where defendant and Hernandez were standing. Noticing bulges in the breast pockets of defendant's "Levi jacket," Officer Straughan asked whether either defendant or Hernandez had any weapons. Both denied "emphatically" that they did. Officer Straughan then asked defendant what he had in his pockets and defendant replied "golf balls." Straughan asked if he could see the golf balls and defendant, after hesitating "at first," produced a golf ball from his left breast pocket. Straughan then asked if he could see the contents of the right breast pocket and defendant said he did not wish to show him. Defendant then turned away from Officer Straughan and Straughan stooped down and shined his flashlight upward at the pocket. Although the pocket was buttoned, the corner of the flap was turned partially up and Straughan, looking upwards, saw in the flashlight beam the top quarter to half inch of a plastic bag sticking out of the pocket. He testified that there was a small quantity of what he thought was probably marihuana adhering to the visible portion of the plastic bag. His conclusion was based on police training and upon experience in prior cases. Straughan seized the plastic bag (which proved upon analysis to contain marihuana) and arrested defendant.

■■ On appeal, both parties have focused their analyses on the dispositive issue in the trial court of whether Officer Straughan was justified in seizing the plastic bag under *State v. Childers,* 13 Or App 622, 511 P2d 447, *rev den* (1973), since he stated at the hearing

on the motion to suppress only that he "thought" the substance contained in the bag was marihuana, but was not positive. Certainty is not required. A well-warranted suspicion is sufficient to establish probable cause. *State v. Keith,* 2 Or App 133, 465 P2d 724, *rev den* (1970); *State v. Childers,* supra, 13 Or App at 629-30. The facts observed by Officer Straughan, as believed by the trial court, regarded in light of his training and experience, are sufficient to warrant a belief that defendant carried a packet of marihuana in his pocket. The fruits of the search should not have been suppressed on that ground.

■ The next question is whether the observation of the marijuana was properly made. While the observation gave probable cause to believe that defendant carried contraband, it may be relied upon to support the search only if the observation occurred from a lawful vantage. If not, then the search is constitutionally impermissible. *Wong Sun v. United States,* 371 US 471, 83 S Ct 407, 9 L Ed 2d 441 (1963); *State v. Corbett,* 15 Or App 470, 516 P2d 487 (1973).

■ Street encounters between patrolling policemen and citizens call the most subtle aspects of the Fourth Amendment into play. The balancing of theoretical purity and practical necessities is an exceedingly delicate process. The police legitimately require great latitude in their patrol activities to investigate any such circumstances as strategy, experience, or intuition may indicate to be possibly related to actual or potential criminal activity. They need not idly await the accumulation of probable cause before they may act. Indeed, effective police work may call for affirmative action in circumstances which are outwardly innocent. This de-

194

cision in no way is meant to restrict effective, vigorous patrol activities.

■ ■ The police have no less right than any other person to approach another and make inquiry regarding circumstances of interest. Many, if not most, encounters between police and citizenry may occur without contemplation of criminal investigation. The police may be called upon to resolve a marital difficulty, assist a disabled person, untangle traffic congestion, escort an intoxicated person to shelter or any other of the myriad of helping or crime deterrence activities which we expect of the police. Tiffany, *Detection of Crime,* 10 (1967). The encounter becomes subject to the restrictions of the Fourth Amendment, however, when the citizen's freedom of movement is restricted or his right to privacy is intruded upon by the process of inquiry or as a development of an encounter which was initiated for non-criminal purposes. A holding of the person, no matter how minor, is a seizure within the meaning of the Fourth Amendment even though no arrest has occurred. As stated in *Terry v. Ohio,* 392 US 1, 16, 88 S Ct 1868, 20 L Ed 2d 889 (1968):

> "* * * It must be recognized that whenever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person. * * *"

Seizures of the person may be of varying intensity. The significance of *Terry v. Ohio,* supra, beyond its immediate holding, is the establishment of the principle that the police may seize or search a person with such a degree of intensity as may be justified by the articulable quantum of knowledge they have and by the gravity of the police purpose to be served.

■ Thus where police have probable cause to be-

lieve a person has committed a crime, they are authorized to deprive him entirely of liberty and to intrude completely upon his privacy, *State v. Cloman,* 254 Or 1, 456 P2d 67 (1969), or to take such lesser action as will achieve the immediate police purposes, *State v. Murphy,* 2 Or App 251, 465 P2d 900, Sup Ct *rev den* (1970), *cert den* 400 US 944, 91 S Ct 246, 27 L Ed 2d 248 (1970); *Cupp v. Murphy,* 412 US 291, 93 S Ct 2000, 36 L Ed 2d 900 (1973).

*Terry v. Ohio,* supra, specifically holds that where there is not probable cause, but an officer sees a person acting in a suspicious manner, he may detain that person for a brief inquiry and, if he has reason to suspect that the subject is armed, he may search the person's body with sufficient intensity as to disclose the existence of weapons.

This court has authorized use of the fruits of a street detention by officers on patrol who articulated the high degree of crime in the area, their suspicions of the specific location in which the defendant was encountered, and the unusual conduct of defendant and his companions, although the officers had less than probable cause to arrest defendant at the time of the detention. *State v. Head,* 13 Or App 317, 509 P2d 52, *rev den* (1973), but we have refused to legitimatize a street detention and search which implied harassment, *State v. Hogg,* 7 Or App 99, 490 P2d 198 (1971).

This case presents a situation of lesser cause for police action than did *Terry*[1] or *Head.* The officers

---

[1] While the majority opinion in *Terry* expressly refrains from dealing with street encounters arising from non-suspicious conduct, 392 US at 19, n. 16, the rationale of the case is nevertheless persuasive and controlling.

here had no articulated reason from defendant's conduct or otherwise to suspect defendant of any criminal activity. They were patrolling because of an unexplained experience of vandalism in the area. Their attention focused on defendant and his companion only because they exited a car in the early morning hours and were the only people on the street. Presence on public streets at a late hour, even in area with a high incidence of vandalism, does not of itself constitute cause for detention, although the police would commonly wish to inquire. Tiffany, supra, 19-35.

■ In such lesser circumstances, the police may take action of a lesser degree of intervention into a person's life. They may approach the person and make reasonable inquiries about his identity and purpose in being abroad, but, as Justice White observed in his concurring opinion in *Terry,* supra, 392 US at 34:

> "* * * There is nothing in the Constitution which prevents a policeman from addressing questions to anyone on the streets. Absent special circumstances, the person approached may not be detained or frisked but may refuse to cooperate and go on his way. * * *"

■ Here there was neither an arrest nor a forcible restraint. Yet, it is unlikely that a pair of young men, alone at night on a dark street summoned to a police car, illuminated by lights from that car, required to produce identification and answer questions, and positioned between two uniformed, armed policemen, would feel free to walk away. One's will is constrained by what is called in an unrelated constitutional setting "a police-dominated atmosphere."⑨ Restraint of liberty can arise either by means of physical force or show of

⑨ *Miranda v. Arizona,* 384 US 436, 86 S Ct 1602, 16 L Ed 2d 694, 10 ALR3d 974 (1966).

authority, *Terry v. Ohio, supra,* 392 US at 19, n. 6, and the constraint of volition is equally real whether it arises by implication from the color of authority of the police or from their express command. The facts of this case indicate that defendant and his companion were the subjects of a seizure cognizable under the Fourth Amendment.

The initial inquiry failed to establish that defendant was wanted or that his presence or activities were suspicious. There is no claim of fear of weapons and no facts which would justify a frisk. Detention by color of authority beyond that stage, if unsupported by articulable cause, constituted a random intervention into the liberty and privacy of a person who happened to be in the presence of the police at an unfortunate time. The defendant, by refusing to disclose the contents of his other pocket and by turning to avoid observation was guilty only of an unsophisticated attempt to assert his right to privacy and would clearly, had he felt free, have walked away. At the moment Officer Straughan bent over and shined his flashlight upward, he was able to observe marihuana in the visible quarter to half inch of the plastic bag showing in the corner of defendant's pocket only because defendant was present for such examination by virtue of a minor detention which was not justified under the Fourth Amendment. Therefore the fruits of that observation are not admissible into evidence and the motion to suppress was properly granted.

This analysis of a street encounter between police and citizen is sufficiently close that we should note that it is not our intention to write a judicial manual of police procedures for patrol and field interrogations. Case law on street encounters of less

than *Terry* magnitude is rare[9] and we do not here attempt to lay down sweeping rules of law in the absence of case by case development. We are simply deciding this case on its peculiar facts. We do not mean to deter the police from preventive and investigative activities of whatever intensity may be deemed advisable to cope with the problems of street crime, consistent with the public expectation of freedom from harassment. We are dealing rather with a question of admissibility of evidence and where, as here, the police activity crosses the often indistinct line of constitutional permissibility, then the fruits of the incursion must be suppressed.

Affirmed.

---

[9] Tiffany, supra, published by the American Bar Foundation, provides an excellent practical analysis of the varieties and purposes of police activities not resulting in arrest.