536 P.2d 709

**The STATE of Arizona, Appellee,**

**v.**

**Nathaniel BAINCH, Appellant.**

**No. 2 CA–CR 545.**

Court of Appeals of Arizona,
Division 2.

June 13, 1975.

Rehearing Denied July 15, 1975.

Review Denied Sept. 30, 1975.

Bruce E. Babbitt, Atty. Gen., by William J. Schafer, III, and John Pressley Todd, Asst. Attys. Gen., Phoenix, for appellee.

John M. Neis, Pima County Public Defender, by Karen Zizmor, Asst. Public Defender, Tucson, for appellant.

OPINION

HOWARD, Chief Judge.

Appellant was convicted of unlawful possession of marijuana and challenges his conviction on the grounds of violation of his Fourth Amendment rights and of Rule 8.2(c), Rules of Criminal Procedure, 17 A. R.S.

Appellant moved to suppress marijuana seized from his person and the following evidence was presented at the suppression hearing. At approximately 2:30 a.m., a Tucson police officer was driving his marked patrol unit south on Stone Avenue and as he crossed the intersection of Stone, Toole and Franklin, he observed a person sitting on the bus bench in front of 283 North Stone. According to the officer, the individual appeared to be either sleeping' or passed out. He was seated in a slouched position with his chin "hung down on his chest". His arms were folded across his lap. The officer pulled his vehicle up to a point where the right front fender was adjacent to the bus bench, turned on the outside speakers of his police radio so that he could hear any calls, got out of his vehicle and approached the bench. He testified that his reason for stopping was that he did not know whether the person (appellant) was sick or unconscious or just sleeping. He testified:

"Q. Okay. And what happened when you got out of your car and went over to the bench?

A. I approached the bench. At that time I realized that the subject must be either asleep or unconscious since the radio was fairly loud. There was no other noise at that time and I noticed that even the noise didn't wake the subject up.

As I approached the bench I shined my flash light in the vicinity of his position on the bench, behind him, down on the ground beneath the bench; didn't observe anything like wine bottles or anything like that. I then continued with my flash light. I noticed in his right front pocket was a pack of cigarettes and matches.

Q. Are these cigarettes—were you able to identify what type they were?

A. Yes, they were Kool filter cigarettes, regular length.

Q. Okay, all right.

A. And then his left front pocket, which was kind of bloused up, open I

would say an inch or inch and a half, or so. I observed what appeared to be joints of marijuana."

The officer went on to testify as to his background in identifying what might be marijuana cigarettes. He had made fifteen or twenty arrests involving such cigarettes and described the configuration of cigarettes he had observed in the past and the types of cigarette paper used. He further testified:

"Q. Could you approximate how many you saw at the time you saw them in the pocket?

A. Well I looked into the pocket. I felt there were possibly fifteen cigarettes.

Q. Okay. Was there anything else, any other circumstances that you observed at that time aside from your observation of those cigarettes, which made you feel that those might possibly be marijuana cigarettes?

A. Only insofar as the subject had failed to wake up after I was say thirty to forty-five seconds of the radio continually blaring."

The officer testified that his main purpose with the flashlight was to look for "weapons, any items of interest". Before flashing the light in appellant's pockets, he tapped appellant's shoes with his boots. The handrolled cigarettes he observed in the left front pocket were in yellow and white papers. When he flashed his light inside appellant's pocket, he saw only the papers and couldn't see what was inside. He reached into the pocket without awakening appellant and pulled out five or six cigarettes. He broke one open and confirmed his suspicion that it contained marijuana. The officer also stated, both on direct and cross-examination, that when he observed the handrolled cigarettes he had no real doubt as to what they were, i.e. that they were probably marijuana ciga-

rettes. The officer continued to search appellant without awakening him and found two prescription bottles in his two front pockets. When he started searching appellant's back pocket for his wallet, appellant awakened.

The officer testified that the reason he did not have any real doubt that the handrolled cigarettes contained marijuana was the fact that there was a pack of regular cigarettes in one pocket and therefore he could not conceive that the other pocket contained handrolled tobacco cigarettes.

The trial court, in denying the motion to suppress, concluded that the seizure of the marijuana cigarettes from appellant's pocket was not unlawful under the "plain view" doctrine and that the totality of circumstances justified the police officer's actions.

■ Appellant's initial contention is that the police officer's act of shining his flashlight into appellant's pocket constituted an unreasonable search within the ambit of the Fourth Amendment. Appellant has cited no law which would indicate that the use of a flashlight under the circumstances presented here constituted an invasion of privacy. It is not open to question but that a police officer observing an individual seemingly sleeping or unconscious on a bus bench in the heart of downtown Tucson late at night would have a duty to investigate to see if assistance was needed. The circumstances here are not the type of "street encounter" within the purview of Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). As stated in State v. Evans, 16 Or.App. 189, 517 P.2d 1225 (1974):

"The police have no less right than any other person to approach another and make inquiry regarding circumstances of interest. Many, if not most, encounters between police and citizenry may occur without contemplation . of criminal investigation. The police may

be called upon to resolve a marital difficulty, assist a disabled person, untangle traffic congestion, escort an intoxicated person to shelter or any other of the myriad of helping or crime deterrence activities which we expect of police. Tiffany, Detection of Crime, 10 (1957). The encounter becomes subject to the restrictions of the Fourth Amendment, however, when the citizen's freedom of movement is restricted or his right to privacy is intruded upon by the process of inquiry or as a development of an encounter which was initiated for noncriminal purposes." 517 P.2d at 1228.

The use of a flashlight under these circumstances was appropriate. The handrolled cigarettes in appellant's left shirt pocket were visible, according to the officer's testimony, and the fact that he observed them with the aid of the flashlight did not make this a "search". See, State v. Greer, 7 Ariz.App. 155, 436 P.2d 933 (1968); State v. Villarreal, 23 Ariz.App. 9, 529 P.2d 1218 (1975).

■ Appellant's next contention is that the officer's observation of handrolled cigarettes did not provide probable cause to seize them. He relies on Thomas v. Superior Court, 22 Cal.App.3d 972, 99 Cal.Rptr. 647 (1972) for the proposition that an officer's observation of a handrolled cigarette does not constitute probable cause of its seizure and examination of its contents. In *Thomas*, the court held that a "handrolled cigarette in white paper", although it was in plain view, was insufficient to furnish the requisite probable cause to believe it was contraband.

The officer's observation of the handrolled cigarettes occurred from his investigation which led to his being in a position to see the cigarettes. Since the investigation was lawful, the plain view doctrine applied. State v. Yuresko, 16 Ariz.App. 369, 493 P.2d 536 (1972). Whether the seizure was reasonable depends on the existence of probable cause to believe that

the item observed was, in fact, contraband. State v. Cabigas, 5 Wash.App. 183, 486 P. 2d 1139 (1971); Thomas v. Superior Court, supra.

■ In contrast to the *Thomas* case, the circumstances here would justify a reasonable, cautious, and prudent police officer to believe that the handrolled cigarettes were contraband. The officer testified as to his prior visual experience with marijuana cigarettes, the normal appearance of marijuana cigarettes and that appellant's handrolled cigarettes resembled those he had seen before; further, that in appellant's other pocket was a pack of regular cigarettes and he was soundly asleep—neither the tap on his shoes nor the loud radio noise awakened him. We believe this evidence was sufficient for the lower court to conclude that the officer's belief that the handrolled cigarettes contained contraband had a factual basis amounting to probable cause in the constitutional context.

■ We hold, therefore, that there was no violation of the Fourth Amendment's proscription against unreasonable searches and seizures. The subsequent search of appellant's person was likewise valid as incident to a lawful arrest for possession of marijuana.

■ Appellant's final contention is that the time limits established by Rule 8.2(c) had been violated and therefore the court should have granted his motion to dismiss pursuant to Rule 8.6, Rules of Criminal Procedure. No useful purpose would be served by detailing the chronology of the proceedings below. Suffice it to say that appellant's trial did occur more than 90 days after his arraignment. However, Rule 8.4 provides that certain periods are excluded from the computation of the time limits set forth in Rule 8.2. Included are delays resulting from continuances in accordance with Rule 8.5 and delays necessitated by congestion of the trial calendar when the congestion is attributable to extraordinary circumstances. The record re-

**144**

flects that an eight days' delay in appellant's trial resulted from a continuance granted to him and the balance of the period which exceeded the 90 days was necessitated by congestion of the trial calendar. In State ex rel. Berger v. Superior Court, 111 Ariz. 335, 529 P.2d 686 (1975), the Arizona Supreme Court discussed Rule 8.-4(c):

> "Rule 8.4(c) contemplates that the presiding judge shall be apprised of the situation in order for the presiding judge to notify the Chief Justice of the delays. In order for delays occasioned by congestion to be excludable, the facts must be so reported. In the instant case had the presiding judge been apprised of the situation, we assume that he would have taken immediate steps to correct the situation in addition to notifying the Chief Justice of this court in order that we could take the proper action if needed. The trial judge should have apprised the presiding judge of this problem and of the extraordinary circumstances, if any, present. Because this was not done, the record before us is void of any finding of extraordinary circumstances upon which we could hold that the time should be excluded. This being the case we cannot exclude any time based on extraordinary circumstances." 529 P.2d at 689.

Appellant's motion to dismiss was heard and denied by the presiding judge of Pima County Superior Court. The transcript of the hearing on the motion to dismiss reflects the requisite existence of extraordinary circumstances which occasioned the congestion and the requisite notification to the Chief Justice of the Arizona Supreme Court. The motion to dismiss was properly denied.

We find no basis for reversal and therefore affirm.

KRUCKER and HATHAWAY, JJ., concur.