*[503] RICHARDSON, J.
Defendant appeals her conviction for the offense of Carrying a Concealed Weapon, a knife, ORS 166.240. The only issue is whether the weapon was obtained by a constitutionally impermissible search or in violation of Oregon’s "stop and frisk” statutes, ORS 131.615 and 131.625. Evidence obtained in violation of these two statutes is subject to suppression. State v. Valdez, 277 Or 621, 561 P2d 1006 (1977).
Two uniform police officers in a marked police vehicle were patrolling an area of the city of Portland which they testified was a high crime area and an area frequented by prostitutes. They observed the defendant, whom they did not recognize, walking in this area. They approached and told her to get off of the streets as they did not want prostitutes walking in that vicinity. The defendant apparently made no response. The officers then left to conduct other police business and did not see whether the defendant, in fact, left. When they returned to the area, in approximately 45 minutes, they saw the defendant cross the street and begin talking to a female, who one officer testified was a known prostitute. They stopped the patrol car next to defendant and one officer approached her and asked for some identification. She was initially belligerent but produced the requested identification: The piece of identification was given to the other officer who ran a "routine record check” on the defendant via the police radio. He was informed there was an outstanding traffic warrant for her arrest. This process took from three to five minutes. During this interval the officer who confronted defendant talked to her about the problems the police experienced with crimes in the area. Defendant was arrested on the traffic warrant and subsequently searched and the knife was found.
The officer who confronted the defendant testified he suspected she was loitering to solicit for prostitution. He based his suspicions, he stated, on the fact she was in this particular high crime area, had been told to *[504] leave and did not, and that she was talking to a known prostitute. Additionally, he testified, in his experience only prostitutes walked the streets in this area and there was no other reason for defendant being on the street in this vicinity.
On appeal both parties have focused their attention on the stop of defendant as the dispositive issue. If the stop was not justified the inquiries and detention to make the record check were not authorized and the fruits of the stop must be suppressed. Wong Sun v. United States, 371 US 471, 83 S Ct 407, 9 L Ed 2d 441 (1963); State v. Evans, 16 Or App 189, 517 P2d 1225, Sup Ct review denied (1974); State v. Corbett, 15 Or App 470, 516 P2d 487 (1973), Sup Ct review denied (1974).
The authority of a police officer to stop a person and make inquiries respecting commission of a crime is set forth in ORS 131.615:
"(1) A peace officer who reasonably suspects that a person has committed a crime may stop the person and, after informing the person that he is a peace officer, make a reasonable inquiry.
"(2) The detention and inquiry shall be conducted in the vicinity of the stop and for no longer than a reasonable time.
sfc * % * 99
The term "reasonably suspects” is given the following meaning in ORS 131.605(4):
" 'Reasonably suspects’ means that a peace officer holds a belief that is reasonable under the totality of the circumstances existing at the time and place he acts as authorized in ORS 131.605 to 131.625.”
A "stop” is defined in ORS 131.605(5):
"A 'stop’ is a temporary restraint of a person’s liberty by a peace officer lawfully present in any place.”
These provisions were enacted as a codification of the police officer’s authority to stop a person similar to the rationale justifying a stop and frisk set out in Terry v. *[505] Ohio, 392 US 1, 88 S Ct 1868, 20 L Ed 2d 889 (1968). See, State v. Valdez, supra.
The "stop and frisk” statute was not enacted exactly as proposed by the Criminal Law Revision Commission. The legislature deleted the words "or is about to commit” which had been proposed by the Commission to define the authority of an officer to stop an individual. In this respect the statute adopts a rule different from the decision in Terry v. Ohio, supra. In that case the court held an officer could stop an individual if he had a reasonable suspicion the individual had committed or was about to commit a crime. Consequently, the Oregon statutory rule is more restrictive than the constitutional rule. An officer in Oregon may only stop a person if he reasonably suspects that person has committed a crime. It is not sufficient that the totality of circumstances would lead to a reasonable suspicion the person stopped was about to commit a crime.
The determination of reasonableness depends upon specific articulable facts that the officer can point to in justifying the stop. It is an objective test as to what a reasonable police officer would think in the situation and not a subjective analysis of what this particular officer thought. State v. Valdez, supra.
With the statutory framework in mind we turn to the contentions of the parties and an analysis of the facts to determine the validity of this stop. The state makes alternative contentions. First, that there was not a "stop” of the defendant in terms of the statute and second, if there was a stop it was justified by a reasonable suspicion the defendant had committed a crime. Defendant contends there was a stop which was not authorized by the statute or the United States or Oregon Constitutions.
The state first contends that the actions of the police officer in approaching defendant, asking her for identification and speaking to her while a record check *[506] was being completed, is not so intrusive an infringement as to constitute a stop under ORS 131.605(5).
In Terry v. Ohio, supra, the court, discussing the stop of an individual on the street, said:
"* * * It must be recognized that whenever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized’ that person. * * *” 392 US at 16.
This is the sense of the statutory definition of a "stop” in ORS 131.605(5). The touchstone of analysis is whether the person accosted could refuse to cooperate and walk away. The restraint on a person’s liberty can arise by means of physical force or a show of authority. As we said in State v. Evans, supra, "[t]he constraint of volition is equally real whether it arises by implication from the color of authority of the police or from their express command.” Here there was no physical restraint by the police other than asking the defendant to stop and identify herself. However, in the context of the events as they unfolded it is unlikely the defendant would feel free to walk away. She was accosted by uniform police officers who approached in a marked patrol car. The same officers had ordered her to leave the area 45 minutes earlier. One officer testified they had seen the defendant cross the street in the middle of the block and she would have been arrested for jaywalking if she had refused to produce identification. This was clearly a stop cognizable under the stop and frisk statutes.
 The state next argues, assuming the confrontation was a "stop” it was authorized since the officers had a reasonable suspicion the defendant was attempting to engage in prostitution or was loitering to solicit for prostitution.
A person commits the crime of prostitution if:
"He engages in or offers or agrees to engage in sexual conduct * * * for a fee.” ORS 167.007(l)(a).
In order to be guilty of an attempt to commit prostitution the defendant would have to engage "in conduct *[507] which constitutes a substantial step toward commission of the crime.” ORS 161.405(1). Nothing in the conduct of the defendant could be classified as a substantial step toward commission of an act of prostitution. She was walking in an area of high vice activity and was seen talking to a known prostitute. There was nothing in these activities to suggest she was attempting to offer or to agree to engage in sexual conduct. She was not observed talking to anyone except the known prostitute and there were no other persons on the street. This is not a remarkable activity. The fact the defendant was walking and conversing in an area of known prostitution activity does not remove her conduct from mere speculation that she was committing prostitution. In short there were no articulable facts indicating a suspicion she had committed the crime of attempting to engage in prostitution.
The state’s argument that there was a reasonable suspicion she was loitering to solicit for prostitution is an apparent reference to the Portland Municipal Ordinance reviewed in State ex rel Juv. Dept. v. D., 27 Or App 861, 557 P2d 687 (1976), Sup Ct review denied (1977). That ordinance provides:
"It is unlawful for any person to loiter in or near any street or public place in a manner and under circumstances manifesting the purpose of inducing, enticing, soliciting or procuring another to commit an act of prostitution. Among the circumstances which may be considered in determining whether such purpose is manifested are that the person repeatedly beckons to, stops or attempts to stop, or engages male passersby in conversation, or who repeatedly stops or attempts to stop motor vehicle operators by hailing them or gesturing to them. * * *” § 14.24.050(b).
What is required under this ordinance for a completed crime is loitering "in a manner and under circumstances manifesting the purpose of inducing, enticing, soliciting or procuring” an act of prostitution. The list of circumstances to be considered in determining if a *[508] loitering person is manifesting the prohibited purpose, while not exclusive, is a prime indicator of the conduct deemed probative of the purpose. While the police officers may have had a reasonable suspicion the defendant was loitering because she was seen in the area on two occasions, there was nothing in her activities which manifested a purpose to solicit for prostitution. Shorn of the police officer’s intuition borne of experience, the articulable objective facts are the defendant was twice seen walking in an area of high prostitution activity and talking to a known prostitute on one occasion. The officers stated they did not observe her talking to male passersby or hailing or attempting to stop vehicles. The officers testified they did not know if the defendant left the area when ordered to do so or what she was doing in the interval between the first and second confrontation. There was no indication from her conduct what her purpose was in being on the street. The police were not aware of the content of her conversation with the other woman, for all they knew the women may have been discussing the NBA playoffs. See, Sibron v. New York, 392 US 40, 88 S Ct 1889, 88 S Ct 1912, 20 L Ed 2d 917 (1968). These facts say little more than the officers react intuitively, based on their experience, to the presence of females in this particular area. Their instincts tell them the ladies walking the streets are prostitutes. As the Supreme Court said in State v. Valdez, supra:
"* * * [T]he trial court must determine whether the standard of reasonable suspicion has been met by the objective test of observable facts, not by reliance on the special intuitions of the officer.” 277 Or at 629.
When asked the reasons for stopping the defendant, one officer testified:
"* * * [W]e talk to all of them [the girls walking in the area], and because we want to know who the girls are, if they’re going to be walking the streets there, we want to know every night who’s on the street, who’s walking and what they’re wearing and so on and so *[509] forth, because when we get the roll jobs we want to know who to go back on.”
The fair inference from the officer’s statement and the other evidence is that the police wanted to know who was on the street in this area. They did not approach and question the only other person on the street, the known prostitute, although she was doing essentially the same thing as the defendant. Since they were aware of the identity of the other woman this satisfied their need to know who was walking the streets. They approached defendant not to investigate a crime but to find out who she was. This may be effective police work by experienced officers but in the context of this case it is prohibited by the statute.
Since we determine the stop was in violation of the statute it is unnecessary to determine if it was also in violation of the Fourth Amendment to the United States Constitution or Art I, § 9 of the Oregon Constitution.
Reversed and remanded.