Argued and submitted February 13, affirmed June 2, 1980

STATE OF OREGON,
*Respondent,*
*v.*
KENNETH CANAPE,
*Appellant.*

(No. DA 170461/2-7905, CA 15729)

611 P2d 1190

Jenny Marlin Cooke, Portland, argued the cause and filed the brief for appellant.

James M. Brown, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were James A. Redden, Attorney General, and Walter L. Barrie, Solicitor General, Salem.

Before Joseph, Presiding Judge, Richardson, Judge, and Schwab, Chief Judge.*

JOSEPH, P. J.

---

*Schwab, C.J., *vice* Lee, J., deceased.

**JOSEPH, P.J.**

Defendant appeals from his convictions for Unlawful Possession of a Weapon (ORS 166.250) and Carrying a Loaded Firearm (Portland City Ordinance No. 138210, § 14.32.010). He assigns as error the denial of his motion to suppress based on his assertion that his encounter with the police involved an unlawful stop. The only issue is whether what the police officers did constituted a stop, and, if it did, whether it was justified.[1]

On May 16, 1979, two Portland police officers were patrolling in uniform in a marked police car near S.E. 60th Ave. and Reedway in Portland at about 9:45 p.m. The officers were aware that there had been several daylight and mid-evening residential burglaries in the preceding two or three weeks in the area bounded by S.E. 44th to 46th Avenues and Reedway and Raymond Streets. The burglary suspect had been described by one victim by height, age and hair shade, that he wore a beard and mustache and was neatly dressed, although not wearing a suit.

Defendant was observed walking southbound on 60th approaching Reedway. The officers observed him cross the middle of the street halfway between Reedway and the first street north. They turned the car around and pulled up along where defendant was walking. The officer who testified at the suppression

---

[1] The legality of the stop was the only issue argued at the suppression hearing. Defendant asserted that there was a stop and that the officers had no legal justification for it under ORS 131.615(1). Therefore, he contended that evidence obtained as a result of the unlawful stop should be suppressed. The state made alternative contentions: first, that the initial police contact with defendant was not a stop, and secondly, that even if there was a stop, it was justified by the officer's reasonable suspicion that defendant had committed a crime.

Defendant did not address the issue of the validity of the search itself at the suppression hearing. He argued only that a stop occurred and that there was no "reasonable suspicion" (ORS 131.615(1)) that he had committed a crime to justify the stop. Since the issue of the validity of the search was not raised by defendant at the suppression hearing, we cannot reach that issue now. *See State v. Hickmann,* 273 Or 358, 540 P2d 1406 (1975); *State v. Miller,* 269 Or 328, 524 P2d 1399 (1974).

hearing stated that they first noticed defendant because he was approximately the right height, he had the same shade of hair, he wore a beard and mustache, and he was dressed consistently with the description of the burglary suspect.

At the intersection of S.E. 60th and Reedway, both officers left their car, identified themselves as officers and asked defendant what he was doing in the area and where he lived. Defendant responded that he lived in southwest Portland and was visiting a friend named "Don," who lived up the street. He indicated where Don lived, but he did not know Don's last name. Defendant was told that he matched the description of a burglary suspect.

The officers then asked defendant whether he had any identification. He stated that he did. He reached into his back pocket and then said his identification was not there and that he must have left it in his car, which he indicated was parked approximately one-half block away and that he would go to his car to get it. The officers agreed. When defendant turned to walk toward his car and had taken two or three steps, one of the officers noticed that defendant's left arm was semi- rigid along his side while his right arm was swinging in a normal walking gait. The officer also observed a bulge under defendant's arm extending down his body about six to eight inches. He suspected that the bulge was a gun. The officer immediately told defendant to stop, walked up to him, reached under his coat and pulled the gun from a shoulder holster. Defendant was ordered to put his hands on his head. He was cooperative and told them he had another gun on his person. The second officer lifted up defendant's coat and removed a pistol from a belt holster inside his belt.

A "stop" is defined in ORS 131.605(5):

"A 'stop' is a temporary restraint of a person's liberty by a peace officer lawfully present in any place."

That statutory provision was enacted as a codification of an officer's authority to stop a person similar to the rationale justifying a stop and frisk outlined in *Terry v. Ohio,* 392 US 1, 88 S Ct 1868, 20 L Ed 2d 889 (1968).[2] *See State v. Valdez,* 277 Or 621, 561 P2d 1006 (1977). In *Terry,* in describing a stop of a person on the street, the Court stated:

"*** It must be recognized that whenever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person. ***" 392 US at 16.

Not every preliminary inquiry of a person by a police officer is a stop within the statutory or *Terry* meaning.[3] In determining whether an encounter is a stop, we must ask "whether the person accosted could refuse to cooperate and walk away." *State v. Brown,* 31 Or App 501, 506, 570 P2d 1001 (1977). In the beginning here there was no physical restraint of defendant. He was accosted, talked to briefly and then asked to identify himself. However, as we have previously noted in *Brown* and *State v. Evans,* 16 Or App 189, 517 P2d 1225, *rev den* (1974), freedom of movement can be restricted by means other than physical restraint. In *Evans,* we stated that "the constraint of volition is equally real whether it arises by implication from the color of authority of the police or from their express command." 16 Or App at 197.

---

[2] In *Terry v. Ohio,* 392 US 1, 88 S Ct 1868, 20 L Ed 2d 889 (1968), the Supreme Court held that an officer could stop an individual if he had a reasonable suspicion that the individual had committed or was about to commit a crime. Under Oregon law, an officer may stop a person only if he reasonably suspects that that person has committed a crime. *State v. Brown,* 31 Or App 501, 570 P2d 1001 (1977).

[3] In *State v. Warner,* 284 Or 147, 585 P2d 681 (1978), the court outlined three generally recognized categories of street encounters between police and citizens:

"*** In descending order of justification, they are: (1) arrest, justified only by probable cause; (2) temporary restraint of the citizen's liberty (a 'stop'), justified by reasonable suspicion (or reliable indicia) of the citizen's criminal activity; and (3) questioning without any restraint of liberty (mere conversation), requiring no justification." 284 Or at 161.

In *Brown v. Texas,* 443 US 47, 99 S Ct 2637, 61 L Ed 2d 357 (1979), the Supreme Court concluded that the appellant had been "seized" when a uniformed officer approached and asked him to identify himself and explain what he was doing in the particular place. Appellant refused and was arrested under a Texas statute making such a refusal a criminal act.[4] While the Court did not address the constitutionality of the statute, it held that the police action of stopping appellant solely to ascertain his identity and having no reasonable suspicion to believe that he was engaged in or had engaged in criminal conduct constituted a seizure under the Fourth Amendment.

In this case, defendant's encounter with the police commenced when two uniformed police officers approached him from their marked patrol car. They inquired as to his reason for being in the area and asked for identification. He was told that he resembled a burglary suspect. He was required to alter his course of conduct substantially; he was permitted only to get his identification. Under the circumstances, it is highly unlikely that defendant felt free to walk away. We conclude that the restraint placed on defendant's liberty was a stop.

Having concluded that the encounter was a stop, the remaining question is whether it was justified.[5] By statute an officer may stop and make relevant inquiry of a person if he "reasonably suspects" that the person has committed a crime. ORS 131.615 provides:

---

[4] The statute provided:

"§ 38.02. FAILURE TO IDENTIFY AS WITNESS

"(a) person commits an offense if he intentionally refuses to report or gives a false report of his name and residence address to a peace officer who has lawfully stopped him and requested the information."

[5] The trial court concluded by looking at the last segment of activity (when defendant turned and walked to get his identification from his car and the officer observed the bulge under his arm) that the officer had a reasonable suspicion that defendant had committed a crime and that that suspicion provided a sufficient basis for the officer's seizure of the weapon.

[458]

"(1) A peace officer who reasonably suspects that a person has committed a crime may stop the person and, after informing the person that he is a peace officer, make a reasonable inquiry.

"(2) The detention and inquiry shall be conducted in the vicinity of the stop and for no longer than a reasonable time.

"(3) The inquiry shall be considered reasonable only if limited to the immediate circumstances that aroused the officer's suspicion."

ORS 131.605(4) provides:

" 'Reasonably suspects' means that a peace officer holds a belief that is reasonable under the totality of the circumstances existing at the time and place he acts as authorized in ORS 131.605 to 131.625."

To justify a stop under the statute there must be specific articulable facts on which to base a reasonable suspicion that the subject has committed a crime. *State v. Valdez, supra* at 626; *State v. Brown, supra* at 505. The determination of reasonableness is based on an objective test. *State v. Valdez, supra* at 626.

The state argues, assuming the encounter was a stop, that the stop was justified because the officers had a reasonable suspicion that defendant was the burglary suspect. Defendant was stopped 14 blocks from the area of the recent series of burglaries, but in the same general residential area. He closely met the description of the suspect and was stopped, according to the officer's testimony at the suppression hearing, because he so closely fit that description. Under the circumstances of the time and place of the stop and defendant's physical appearance matching the description of the burglary suspect, the officers reasonably suspected that defendant had committed the burglaries.

Affirmed.