Argued and submitted May 13, affirmed July 27, 1981

# STATE OF OREGON,
*Respondent,*

*v.*

# GEORGE PATRICK CHARMLEY,
*Appellant.*

(No. C 80-04-31506, CA 19302)

631 P2d 795

Marianne Bottini, Deputy Public Defender, Salem, argued the cause for appellant. With her on the brief was Gary D. Babcock, Public Defender, Salem.

Thomas H Denney, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and William F. Gary, Solicitor General, Salem.

Before Gillette, Presiding Judge, and Roberts and Young, Judges.

GILLETTE, P. J.

## GILLETTE, P. J.

Defendant appeals from his convictions for Burglary in the First Degree and Ex-Convict in Possession of a Firearm. He assigns as error four separate rulings of the trial court, three denying motions to suppress certain testimonial and physical evidence and one denying him a post-indictment preliminary hearing. We affirm.

### FACTS

Officer William Phillips of the Portland Police Bureau received a radio call at approximately 8:36 p.m., on April 23, 1980, to go to 4731 SW 18th Drive in Portland to investigate a burglary in progress. He arrived at about 8:41 p.m. Residents of the burglarized home, a man and woman, reported that two suspects had run down the hill behind the home. As they fled, shots were fired. The residents were uninjured. The additional information was reported by Phillips on the radio. Investigating, Phillips found a green station wagon parked nearby on SW Fairmont at the entrance of SW 18th Drive. He told Officer Leon LeFebvre about the station wagon.

Officer Robin Magnuson, who was in the area, received radio information on the burglary, the station wagon and the fact that shots had been fired. Driving toward Fairmont Drive and 18th Street on Chesapeake Road, she heard noises to the right of her vehicle and saw two men stepping out of bushes in front of the police car. The area was heavily wooded. She knew that the burglarized home was immediately "up the hill and over to my right," although she could not estimate the exact distance.

As the men came out of the bushes, they began running downhill toward Magnuson's car. When they saw her, they turned and started walking uphill. They had numerous scratches and abrasions on their arms, chests and backs, and were breathing hard, as if they had been running. Magnuson stopped them. Defendant, one of the two men, wore no shoes; neither wore a shirt. When asked what they were doing, the men stated they were jogging. She asked if they had a car. Defendant and his companion said they had a green compact station wagon on Fairmont.

Magnuson told defendant and companion there was trouble in the area. She asked if they would get in the back seat of her police car until she completed an investigation. They complied. Magnuson explained at the hearing that she made this request because she believed both men were involved in the burglary.

Officer LeFebvre had also responded to the call to 4731 SW 18th Drive. He found the green station wagon. The car was parked "off of the paved traffic lane" on the shoulder of the road. No one was present. The only information he had relating to it was that it was possibly involved in the burglary. LeFebvre tagged it and had it towed. Prior to towing it, he performed an inventory search with his partner, Officer Gerber. They found a blue nylon stuff bag containing a pair of bolt cutters. A crowbar, a hammer, a pair of lineman's pliers, a screwdriver, seven syringes, a box of nine millimeter bullets, a right-handed cloth glove and a blue knit cap were also found.

Officer LeFebvre testified he searched the wagon at the scene both for protection and to look for evidence. In response to a question about the reason he tagged the wagon, he testified he only tagged it for parking the wrong way on the street. LeFebvre did not state whether or not he would have had the wagon towed but for the reported burglary. He admitted it was important to have taken it in because it was a suspect vehicle.

Officers Paresi and Linhares interviewed defendant on April 24, 1980 at 12:56 a.m. He was advised of his constitutional rights. He stated he understood his rights and agreed to talk to the officers.

He at first denied involvement in the burglary. Paresi told defendant his companion had admitted their participation. After he was confronted with his companion's statements which implicated him, defendant still denied involvement. Then Officer Linhares explained he was concerned a child would find the gun (which was said to have been thrown down in the brushy area) and would be hurt. Defendant then acknowledged that he had been at the scene of the burglary.

At this point Magnuson took defendant's companion to the area, where they recovered all the items said to

have been taken. Defendant's interview was suspended. Upon their return, defendant was interviewed again. He admitted a coat found in the area was his. Defendant was shown the jewelry found in it. He then admitted his part in the burglary.

## EVIDENCE DERIVED FROM STOPPING DEFENDANT

■     Defendant first assigns as error the trial court's failure to suppress all evidence derived from the stop of defendant and the other man by Officer Magnuson. He contends that Magnuson did not have a basis, under ORS 131.615,[1] to stop and question them.

We disagree. The facts which we have set out (and which are drawn in large part from the statement of facts in defendant's own brief) establish that there was a reasonable basis to stop the two: There was a police broadcast indicating two suspects had fled downhill from the scene of a burglary; Magnuson, on her way to the scene, observed defendant and the other man emerge from brush beside the road at a point downhill from the burglary scene; they were breathing heavily and were scratched up in a manner suggesting they had been running through brush. Their story that they were joggers was very doubtful—defendant was barefoot—and they admitted connection with a green station wagon. There was, in fact, probable cause to arrest. *See, e.g., State v. Williams,* 47 Or App 1171, 615 P2d 1183; *State v. Canape,* 46 Or App 453, 611 P2d 1190 (1980).

## STATEMENTS

■     Defendant also maintains that the statements he made to the officers should have been suppressed because they were not voluntarily made. To the contrary, we find

---

[1] ORS 131.615 provides:

"(1) A peace officer who reasonably suspects that a person has committed a crime may stop the person and, after informing the person that he is a peace officer, make a reasonable inquiry.

"(2) The detention and inquiry shall be conducted in the vicinity of the stop and for no longer than a reasonable time.

"(3) The inquiry shall be considered reasonable only if limited to the immediate circumstances that aroused the officer's suspicion."

that there are facts in the record which establish that defendant was advised of his constitutional rights, understood them, and was told (truthfully) that the other suspect had confessed and had implicated him. He confessed thereafter. From these facts, the trial court could conclude—as it did—that defendant's admissions were voluntarily made. Defendant offered evidence raising contrary inferences, but the trial judge was under no obligation to accept that testimony, and he obviously did not do so. The trial court did not err in refusing to suppress the statements.[2]

## AUTOMOBILE INVENTORY

■　As already described, certain evidence was obtained from the green station wagon. Officer LeFebvre testified that the car was illegally parked, facing the wrong direction, and that he caused it to be towed for that reason. He had caused other vehicles to be towed on previous occasions for the same reason. The trial judge believed LeFebvre, specially finding that the inventory was conducted primarily for the protection of the property. The court did rule, however, that the inventory was too intrusive with respect to the search of the nylon bag and suppressed evidence which came to light as a result of that overly intrusive act.

The facts as found by the trial judge are supported in the record. *See State v. Warner,* 284 Or 147, 585 P2d 681 (1978); *Ball v. Gladden,* 250 Or 485, 443 P2d 621 (1968). While we view this as a close question, we believe the trial judge was correct in holding, from the facts he found, that the other evidence derived in the inventory of the car was properly seized. *South Dakota v. Opperman,* 428 US 364, 96 S Ct 3092, 49 L Ed 2d 1000 (1976); *State v. Crosby,* 35 Or App 617, 582 P2d 40 (1978), *rev den* (1979).

## POST INDICTMENT
## PRELIMINARY HEARING

Defendant's contentions concerning his right to a post-indictment preliminary hearing have been answered

---

[2] Defendant also argues that his statements were the product of an illegal arrest. Inasmuch as we have held that there was probable cause to arrest, this contention also fails.

adversely to him in *State v. Clark,* 291 Or 231, 630 P2d 810 (1981).

Affirmed.