Argued and submitted August 24, 1981, affirmed March 8, 1982

# STATE OF OREGON,
## *Respondent,*
### *v.*
# ERIC DEVON BUTLER,
## *Appellant.*

(No. C-80-08-32875, CA 19979)

641 P2d 655

David L. Slader, Portland, argued the cause and filed the brief for appellant.

Rudolph S. Westerband, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and William F. Gary, Solicitor General, Salem.

Before Buttler, Presiding Judge, Joseph, Chief Judge, and Warren, Judge.

WARREN, J.

## WARREN, J.

Defendant appeals his conviction for burglary in the second degree. He assigns as error the trial court's denial of his motion to suppress statements he made following his arrest.

On August 24, 1980, around 6:45 p.m., a burglary in progress in northeast Portland was reported to police. The report was broadcast to Officer Gregory Igo and his partner, who were in the immediate area of the burglary responding to another call. They were told that three black males, one of whom was wearing a green jersey, were breaking in to the Standard Dairy warehouse. Upon arrival at the scene, the officers were met by the witness who had reported the break-in. She told the officers that two suspects had just left the dairy and were headed south on Union Avenue.

Officer Igo immediately walked to the corner of Union and Graham and saw two young black men a block and a half away on Union, one wearing a green jersey and white trousers, the other wearing a white shirt and rust trousers. Officer Igo returned to the witness and asked her for more details describing the men she saw breaking into the dairy. The witness could only say that the men were young, one was wearing a green jersey, the other, "something white"; she had not noticed the color of their trousers.

At this time, the suspects were out of sight. The officers returned to the dairy and noticed that a door had been pegged open with a piece of cardboard, apparently to allow re-entry. They suspected that the burglars would return. They set up surveillance in the area of the dairy. Two men were seen approaching the dairy; when they saw the officers, they turned and ran in the opposite direction. About ten minutes later, defendant was arrested and was positively identified by Officer Igo as one of the men he had observed near the dairy a few minutes after the break-in was reported and as one of the men who had returned and then fled upon seeing the police. Defendant admitted that he had gone into the dairy, and his statements were received as evidence at trial.

Defendant contends that the statements he made after his arrest should be suppressed because the arrest

was illegal, having been made without probable cause. He argues that the description available to the police was too general to support probable cause to arrest.

Defendant relies on *State v. Gressel,* 276 Or 333, 554 P2d 1014 (1976), and *State v. Verdine,* 290 Or 553, 624 P2d 580 (1981), two cases in which the Supreme Court found that probable cause had not been established. In *Gressel,* a description of a burglary suspect as "white male wearing a dark hip-length jacket" was not sufficient to give police probable cause to search the defendant, who matched that description and who was found ten minutes after the burglary was discovered about one-half mile from the site. In *Verdine,* before the burglary was discovered, the victim saw and spoke with the defendant about a quarter-mile from the site of the burglary. Police were informed that he had been seen in the area and arrested him when they found him under a bridge. The Supreme Court found that, while the police may have had a strong suspicion that the defendant was involved in the burglary, his proximity to the burglary site, without more, did not rise to probable cause.

The facts in this case differ from those in *State v. Gressel, supra,* and *State v. Verdine, supra.* Here defendant matched a general description given by a witness who had observed him at the scene of the burglary. He was seen by police on a street where the eyewitness to the burglary stated the suspects had gone; he was observed returning to the scene, which the officers reasonably expected the suspects would do; and when he saw the police in the area, he and his companion fled. On these facts, there was probable cause to arrest him.[1] *State v. Jones,* 248 Or 428, 435 P2d

---

[1] In the past, this court has used the phrase "well-warranted suspicion" as the basis for determining whether there was probable cause to search or arrest. *See, e.g., State v. Williams,* 47 Or App 1171, 615 P2d 1183 (1980). However, in *State v. Verdine, supra,* 290 Or at 557, the Supreme Court said:

"* * * [A] suspicion, no matter how well founded, does not rise to the level of probable cause."

The court stated that this was consistent with *State v. Gressel, supra,* 276 Or at 339, which held that

"* * * a suspicion, however well founded, *having been aroused merely on the basis of an assertion of one's constitutional rights,* can play no part in creating probable cause for a search." (Emphasis added.)

317 (1967); *see also, State v. Charmley,* 53 Or App 225, 631 P2d 795 (1981). The trial court was correct in refusing to suppress defendant's statements.

Affirmed.

---

While undoubtedly the assertion of a constitutional right cannot form part of the basis for a finding of probable cause, the statement in *Verdine* leaves doubt as to the correct standard to be applied in determining whether there is probable cause.