Submitted on record and briefs September 15, 1981,
affirmed January 25, 1982

## CITY OF PORTLAND,
*Respondent,*

*v.*

## PETERSON aka Stevens,
*Appellant.*

## (No. DA 190309-8004, CA A21210)

639 P2d 638

Diane L. Alessi, Portland, and Ransom & Blackman, Portland, filed the brief for appellant.

Thomas H. Denney, Assistant Attorney General, Salem, and Dave Frohnmayer, Attorney General, and William F. Gary, Solicitor General, Salem, filed the brief for respondent.

Before Richardson, Presiding Judge, Joseph, Chief Judge, and Van Hoomissen, Judge.

JOSEPH, C. J.

## JOSEPH, C. J.

Defendant appeals her conviction for violation of a Portland city ordinance which prohibits loitering to solicit prostitution.[1] She contends, first, that the trial court erred in denying her motion to suppress evidence, because the police had no reasonable suspicion on which to base stopping the car in which she was riding.

In the middle of the afternoon on April 3, 1980, Officer Wong, in plain clothes and driving a sports car along a busy northeast Portland street, observed defendant and a female companion, Julie Burr, standing at the corner of Northeast Union Avenue and Clackamas Street. He saw them smile and wave at a lone male motorist. Wong circled the block and saw them wave at the driver of another car, indicating that they wanted him to stop. They stepped out into the street and engaged the driver in conversation. He then drove on. About two minutes later, Wong saw them smile and wave at the driver of yet another car. Burr spoke to that driver, exchanged some words with defendant and then shook her head as if to indicate "no" to the driver, who then also drove on. The two women then smiled and waved at Officer Wong as he approached them, but when Burr bent down to look at him, she shook her head "no" again. He drove away and parked where he could watch the women. He saw them smile at the lone male driver of a Ford Granada and subsequently get into the car, which then went four or five blocks before it stopped, and the two women got out. They walked back to the corner where Wong first spotted them. He then left to question the driver of the Ford Granada. Meanwhile, he received a call from

---

[1] Section 14.24.050, Code of the City of Portland, provides, in part:

"Loitering to solicit prostitution. As used in this section, 'prostitution' means an act of sexual intercourse or sodomy between two persons, not married to each other, in return for the payment of money or other valuable consideration by one of them.

"(B) It is unlawful for any person to loiter in or near any street or public place in a manner and under circumstances manifesting the purpose of inducing, enticing, soliciting or procuring another to commit an act of prostitution. Among the circumstances which may be considered in determining whether such purpose is manifested are that the person repeatedly beckons to, stops or attempts to stop,' or engages male passersby in conversation, or who repeatedly stops or attempts to stop motor vehicle operators by hailing them or gesturing to them. * * *"

Officer Sharp, another plainclothes officer who had also encountered the women and who reported that they had left in a red Datsun driven by a lone male. Wong then notified a uniformed car to stop the Datsun for the questioning of its occupants. These events occurred during a span of 40 minutes.

Contrary to defendant's contention that the "most readily apparent inference" from the behavior of the two women was that they were "simply hitch-hiking," we agree with the trial court that Officer Wong reasonably suspected that defendant was loitering to solicit prostitution. ORS 131.605(4); 131.615. What Officer Wong observed was more than simply two women who "didn't look right," *State v. Valdez,* 277 Or 621, 628, 561 P2d 1006 (1977), or who were merely loitering. *State v. Brown,* 31 Or App 501, 570 P2d 1001 (1977). The conclusion he drew from the women's behavior is a conclusion a reasonable police officer could draw. *State v. Valdez, supra,* 277 Or at 626.[2]

■ Defendant next contends that the trial court erred in denying defendant's motion in limine to exclude what occurred *after* defendant and her companion accepted the ride in the vehicle in which they were eventually stopped by police.[3] She argues that what occurred after she was picked up is irrelevent to prove that she was loitering to solicit prostitution, because once she was picked up, she was no longer loitering. Be that proposition as it may, the decisive question was whether she was loitering *to solicit prostitution.* Evidence of acts of prostitution would go directly to that issue. Defendant's contention that the "highly inflammatory" nature of the evidence outweighed its probative value is without merit.

■ Next, defendant assigns as error the trial court's refusal to grant her motions for a continuance and for a new trial. The basis of her argument is that she was not

---

[2] The state points out that Officer Wong's police report revealed that the women asked the driver of the Ford Granada if he "was interested in a good time." This would clearly strengthen the court's conclusion. However, the trial judge stated at the hearing on the motion to suppress that he had not read the police reports. Nevertheless, he made the correct decision.

[3] The driver of the car stated to police that he had realized the women were prostitutes by their behavior in the car. He told police that defendant reached over his shoulder to feel his penis and asked him if that felt good. He stated that all he could do was moan.

provided with a special report prepared by Portland Police Officer Sharp until the pre-trial hearing. The report detailed an encounter between the officer and defendant which occurred while Officer Wong was questioning the driver of the Ford Granada and before she accepted the ride in the red Datsun. During this encounter, defendant, who apparently was unaware that Officer Sharp was a police officer, admitted she was "hustling" but refused to "do it in the car," because Sharp refused to expose his penis to her first. The rest of the report detailed the on-the-street interview of the women conducted after they were stopped in the red Datsun.

Defendant contends that the state's failure to comply with the discovery statute (apparently by only belatedly making available Officer Sharp's report) entitled her to a continuance in order to allow her time to prepare fully in the light of the newly discovered report. However, because we find the state's delay did not prejudice the preparation of defendant's case and because we are not persuaded that a continuance was "warranted for the purpose of facilitating justice," *State v. Dyson,* 292 Or 26, 36, 636 P2d 961 (1981), we uphold the trial court's exercise of discretion in refusing to impose any "sanction."[4]

First, we note that the trial court granted defendant's motion to suppress statements made by defendant during the interview with Officer Sharp after she was stopped in the car. Hence, the late discovery of the portion of the police report describing that interview was not prejudicial to the defense.

Defendant further contends that Officer Sharp's statement in the report that he had "approached the

---

[4] In *State v. Dyson, supra,* the court said that while prejudice must always be considered in deciding what sanction to impose for violation of the discovery statute, its absence does not preclude the imposition of a sanction because "efficient judicial administration" might be frustrated by the violation. In *Dyson,* the court found such frustration when the district attorney failed to respond to defendant's discovery request until four days before trial and then contended that postponement was the only proper remedy. More significantly, however, the court said that such frustration is particularly apparent where there has been a "history of non-compliance with court rules and court directives" by the state. 292 Or at 36. There is no evidence in the record here to suggest that the state acted in bad faith in its late delivery of the report or that the deterrent aspect of discovery violation sanctions was warranted.

defendant 'regarding the loitering situation in an attempt to make a Prostitution case on her * * *' " suggested the possibility of the defense of entrapment, preparation for which a continuance was appropriate. We do not see the logic of that, for defendant was charged with loitering to solicit prostitution, not prostitution, and Sharp's statement does not suggest that he intended to implant the idea of loitering to commit prostitution in defendant's mind.[5]

Finally, defendant argues that the mention in the report of an Officer Swetman, who observed defendant's entry into the red Datsun, was of significance to her case. Because the report discloses that Swetman's participation in the matter was insignificant,[6] the denial of a continuance could not have been prejudicial to defendant. Defendant's subsequent motion for a new trial was based on a claim of surprise, because six days after defendant's trial Swetman resigned from the Portland Police Bureau as a result of an investigation into misconduct. Because there was no evidence in this case of any misconduct on his part, either related to this case or otherwise, his resignation from the police could not have surprised defendant to her prejudice.

■ Defendant's final assignment is that the trial court erred in denying her "motion in limine" to declare that the accusatory instrument in her case stated a violation under ORS 161.565, punishable only by a fine, rather than a crime carrying a maximum penalty of six months' imprisonment, a $500 fine or both under the Code of the City of Portland. Assuming, without deciding, that the provisions of the Oregon Criminal Code apply to Portland city ordinances, we are not persuaded that defendant was charged with a violation as defined in ORS 161.565.[7] Defendant reads *State v. Wolfe,* 288 Or 521, 605 P2d 1185 (1980), to

---

[5] Indeed, from the evidence in Officer Wong's police report alone, it seems clear that it was not necessary to plant even the idea of prostitution in defendant's mind.

[6] He observed defendant make contact with the driver of the red Datsun. This observation was not crucial to the case.

[7] ORS 161.565 provides:

"An offense is a violation if it is so designated in the statute defining the offense or if the offense is punishable only by a fine, forfeiture, find and forfeiture or other civil penalty. * * *"

say that a culpable mental state is required for all offenses, except those that are punishable only as violations. She maintains that the ordinance which she violated does not require a culpable mental state.

However, the language of that ordinance is:

"It is unlawful for any person *to loiter in or near any* street or public place in a manner and *manifesting the purpose* of inducing, enticing, soliciting or procuring another to commit an act of prostitution." (Emphasis supplied.)

It clearly reflects a prohibition only directed at one whose *intent* is to solicit for prostitution. Moreover, here, as in *State v. Wolfe*, 41 Or App 79, 596 P2d 1322 (1979), *aff'd on other grounds*, 288 Or 521, 605 P2d 1185 (1980), defendant was charged with "knowingly" engaging in the act with which she was charged. Because a culpable mental state was pleaded and presumably proved to the trial judge, defendant's act was properly punishable by a term of imprisonment.[8]

Affirmed.

---

[8] The trial court sentenced defendant to a term of imprisonment for 60 days, suspended execution of the sentence and placed her on bench probation for one year.