Argued and submitted November 10, 1982, reversed March 2, 1983

# CITY OF PORTLAND,
*Respondent,*
*v.*
# MILLER,
*Appellant.*

(DA 204306-8012; CA A24232)
659 P2d 980

Paul S. Petterson, Portland, argued the cause and filed the brief for appellant.

Richard D. Wasserman, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and William F. Gary, Solicitor General, Salem.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

ROSSMAN, J.

## ROSSMAN, J.

Defendant appeals her conviction for loitering to solicit prostitution, in violation of Portland city ordinance 14.24.050. She contends that the ordinance is unconstitutionally vague and overbroad and that there was insufficient evidence to convict. Because we reverse for insufficient evidence, we do not reach the constitutional issues.

The ordinance provides, in pertinent part:

"As used in this section, 'prostitution' means an act of sexual intercourse or sodomy between two persons, not married to each other, in return for the payment of money or other valuable consideration by one of them.

"* * * * *

"(b)  It is unlawful for any person to loiter in or near any street or public place in a manner and under circumstances manifesting the purpose of inducing, enticing, soliciting or procuring another to commit an act of prostitution. Among the circumstances which may be considered in determining whether such purpose is manifested are that the person repeatedly beckons to, stops or attempts to stop motor vehicle operators by hailing them or gesturing to them. No arrests shall be made for a violation of this subsection unless the arresting officer first affords the suspected person an opportunity to explain his or her conduct, and no one shall be convicted of violating this section if it appears at the trial that the explanation given was true and disclosed a lawful purpose."

At the close of the state's case-in-chief, defendant moved for a judgment of acquittal,[1] which tests the sufficiency of the evidence to support a verdict. ORS 136.445. The trial court denied the motion:

"Well, I have to look at the evidence most favorable to the State, * * * and there's * * * evidence that, looked at favorably to the State, makes out a, a need for [defendant] to proceed, so I will deny the Motion."

The state's evidence at that point was that on a cold November night, two vice officers, Wong and Roberts, were investigating prostitution and drug activity in downtown Portland. They were stationed on the third or fourth

---

[1] Defendant actually moved for a "directed verdict." The trial court treated it as a motion for judgment of acquittal; the state so treats it on appeal, as do we.

floor of a parking structure across the street from Dinty Moore's Tavern and the Lotus Cardroom. They watched the pedestrian traffic in front of those establishments. About 7:10 p.m., they saw defendant alight from a white Cadillac that had pulled up in front of Dinty Moore's. She was wearing tight, white cotton pants, tucked in her boots, and a brown, waist-length fur jacket. Neither officer knew who she was. Wong watched her for 30 to 40 minutes. Roberts was with him for the first 15 minutes. During that time, they saw defendant wave at passing vehicles and approach a man on the sidewalk and engage him in conversation. He finally walked around her, shaking his head as if to say "no." Defendant then went into Dinty Moore's for a few minutes, came back out and walked over to the front of the Lotus Cardroom where she again waved and smiled as cars drove by. Meanwhile, Roberts drove around the block in his unmarked car, intending to "contact" her. She did not wave or pay any attention to him as he drove by. Roberts had been "in vice" only about three months and had no reason to believe defendant was familiar with him.

While defendant stood near the corner smiling at passing cars, several cars slowed but none stopped, and defendant did not talk to any of the drivers. About 7:40 p.m., she walked back to and entered Dinty Moore's. Roberts had rejoined Wong, and at 8 p.m. they descended from their viewpoint and entered Dinty Moore's. They found defendant sitting at the bar having a hard-boiled egg and a drink. They identified themselves and asked defendant to step outside, where they asked her what she had been doing in the area for the past 40 minutes. Roberts did not remember any particular statements by defendant. Wong, however, recalled that she said she had not been outside at all and had just been let off by a friend.

The state argues that the evidence was sufficient to permit a rational trier of fact to draw the inference that defendant had intended to solicit prostitution. We disagree. It may have been sufficient to give a reasonable police officer reasonable suspicion to stop and question defendant, *see City of Portland v. Peterson,* 55 Or App 537, 539-40, 639 P2d 638 (1982), but we cannot say it was enough to prove beyond a reasonable doubt the requisite intent to solicit a prohibited act for consideration. Unlike in *Peterson,* there

was no evidence here of any subsequent acts of prostitution, which would go to the issue of defendant's intent to solicit, nor was there evidence that defendant had admitted being a prostitute who worked in that area. Such admissions were crucial in *State ex rel Juv. Dept. v. D.*, 27 Or App 861, 557 P2d 687 (1976), *rev den* (1977). There, the defendant had been observed on a winter day for 10 to 15 minutes, during which she had walked up and down a single block about a dozen times, had leaned over and looked into cars that had slowed and were driven by older men, and had gestured toward a male passenger with whom she spoke briefly. When questioned by police before her arrest, she admitted being a prostitute who had been in the area for some time. We said:

> "While we might not agree that the child's activity prior to her admissions proves beyond a reasonable doubt that she was loitering to solicit prostitution, her activity taken together with the admissions provides a sufficient basis for finding beyond a reasonable doubt that she violated the ordinance." 27 Or App at 867.

This offense, like any other, consists of certain essential elements, each of which requires proof beyond a reasonable doubt. The ordinance here makes it unlawful "to loiter * * * in a manner *and manifesting the purpose* of inducing, enticing, soliciting or procuring another to commit an act of prostitution * * * in return for money or other valuable consideration." (Emphasis supplied.) The necessary element of defendant's specific intent is lacking here. When there is no evidence to prove an essential element of an offense or if the evidence offered to prove the required fact is insufficient to support a jury finding of proof beyond a reasonable doubt, there is insufficient evidence to submit the case to a jury and a judgment of acquittal is appropriate. ORS 136.445. Defendant's activity may have been "in the manner of," but evidence that defendant "hung around" in the manner of working prostitutes does not, without more, establish the requisite intent. Simply stated, it is not a violation of the law merely to look like a prostitute might. The ordinance demands more than that.

Reversed.