Argued and submitted December 19, 1989, affirmed October 10, reconsideration denied November 28, 1990, petition for review denied January 3, 1991 (311 Or 60)

CITY OF PORTLAND,
*Respondent,*

*v.*

Christine Marie POTTS,
*Appellant.*

(DA387019; CA A60323)

799 P2d 168

Garrett A. Richardson, Portland, argued the cause and filed the brief for appellant.

Rives Kistler, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave

Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

BUTTLER, P. J.

**BUTTLER, P. J.**

Defendant appeals her conviction for loitering to solicit prostitution. Portland City Code 14.24.050. We affirm.

Defendant demurred to the complaint on the grounds that Portland City Code 14.24.050 has been preempted by ORS 167.007, ORS 161.405 and ORS 167.012, in that it requires less culpability than that required by those statutes, and that the ordinance is vague and, therefore, violates Article I, sections 20 and 21, of the Oregon Constitution. The demurrer was overruled. She also moved to suppress evidence obtained as a result of the arrest, which was denied. The city called only one witness, the arresting officer. Defendant called no witnesses. At the close of the evidence, she moved for a judgment of acquittal, which was denied. Defendant assigns error to each of the court's rulings.

■ We address the preemption arguments first, because they are potentially dispositive. Portland City Code 14.24.050(b) provides:

> "It is unlawful for any person to loiter in or near any street or public place in a manner and under circumstances manifesting the purpose of inducing, enticing, soliciting, or procuring another to commit an act of prostitution. Among the circumstances which may be considered in determining whether such purpose is manifested are that the person repeatedly beckons to, stops or attempts to stop, or engages in conversation, male passersby, or repeatedly stops or attempts to stop motor vehicle operators by hailing them or gesturing to them."

Defendant contends that that section is incompatible with state law, because it requires that the defendant "knowingly" loiter, which is less strict than the "intentional" mental state required by the state prostitution statutes.[1]

She argues first, relying on our opinion in *City of Portland v. Peterson*, 55 Or App 537, 543, 639 P2d 638 (1981), that section 14.24.050(b) requires "knowing" loitering. *Peterson* does not so hold. There, the defendant argued that the trial court could not impose a sentence of imprisonment for

---

[1] The complaint alleges that defendant "did unlawfully and knowingly loiter * * *." Defendant does not contend that the complaint fails to state a crime because it does not allege that her conduct was intentional.

violating section 14.24.050(b), because the ordinance did not require proof of *any* culpable mental state. 55 Or App at 543. We rejected the defendant's reasoning. First, we held that the ordinance "clearly reflects a prohibition only directed at one whose *intent* is to solicit for prostitution." 55 Or App at 543. (Emphasis in original.) Then, relying on *State v. Wolfe,* 41 Or App 79, 596 P2d 1322 (1979), *aff'd* 288 Or 521, 605 P2d 1185 (1980), we reasoned that, even if the ordinance did not expressly require proof of any culpable mental state, the defendant had been *charged* with "knowingly" engaging in the act with which she was charged, and that element was "presumably proved." We concluded that, because a culpable mental state had been pleaded and proved, a sentence of imprisonment could be imposed pursuant to ORS 161.105(3).

Thus, we did not hold in *Peterson* that the ordinance requires "knowing" loitering. Given the defendant's contention, we held only that an offense committed knowingly would support imprisonment. In fact, we expressly stated that the ordinance requires loitering *with the specific intention* of soliciting for prostitution. *See also City of Portland v. Miller,* 62 Or App 145, 659 P2d 980 (1983). We reject defendant's contention that the ordinance requires a different level of culpability than is required by state law.[2]

In *City of Portland v. Levi,* 98 Or App 341, 779 P2d

---

[2] Defendant claims that Portland City Code 14.24.050 is inconsistent with state law in another respect. The ordinance defines "prostitution" as "engaging in, offering to engage in, or agreeing to engage in an act of sexual conduct or sexual contact, as those terms are defined in section 14.36.065, *with a person not married to the actor,* in return for the payment of a fee." Portland City Code § 14.24.050(a). (Emphasis supplied.) Under ORS 167.007(1)(a), a person commits the crime of prostitution if the person "engages in or offers or agrees to engage in sexual conduct or sexual contact in return for a fee." "Sexual contact" is defined as "any touching of the sexual organs or other intimate parts of a person *not married to the actor* for the purpose of arousing or gratifying the sexual desire of either party." ORS 167.002(5). (Emphasis supplied.) "Sexual conduct" is defined as "sexual intercourse or deviate sexual intercourse." ORS 167.002(4). There is no express exemption in ORS 167.002(4) for a person who engages in sexual intercourse or deviate sexual intercourse with a person to whom the actor is married.

Defendant argues that the statute does not exempt married persons from prosecution for prostitution and, because the ordinance does exempt them, it conflicts with state law in that it permits conduct that the statutes do not permit. *City of Portland v. Dollarhide,* 300 Or 490, 714 P2d 220 (1986). In her demurrer to the complaint, defendant argued only that the statute preempts the ordinance because the two require different mental states. We have disposed of that contention. We decline to consider this new argument, raised for the first time on appeal.

*192* (1989), *on reconsideration* 100 Or App 349 (1990), decided after this case was argued, we held that Portland City Code 14.24.050(b) is not vague in violation of Article I, sections 20 and 21. The trial court did not err in overruling defendant's demurrer on that ground.

■ Next, defendant contends that the trial court erred in failing to grant her motion to suppress evidence obtained as the result of her arrest, because the officer did not have probable cause to believe that she had committed an offense in his presence. ORS 133.310(1)(j). At the suppression hearing, Officer Watts testified that he was on vice patrol at approximately five o'clock in the evening when he received a call from another officer, who had seen a suspected prostitute loitering near 82nd and N.E. Holladay. He could not respond immediately. Approximately 30 minutes later, he received a call advising him that a businessman had reported that there was a prostitute loitering near his business at 82nd and N.E. Holladay. The businessman described a woman dressed in a short skirt, a fur coat and fishnet stockings. He reported that she got into a van that appeared to be driven by a "john," that the same van had dropped the woman off in front of his store some time later and that she had resumed loitering.

Watts testified that 82nd and N.E. Holladay is the "premier location for prostitutes to meet johns right now in the city of Portland." He described it as an "extremely high vice area." After receiving the second report, Watts drove to the area. When he arrived, he saw defendant standing on the street, bending over to catch a passing driver's eye. Her clothes matched the description given by the businessman.

Watts recognized defendant, because he had arrested her in the past for prostitution and had had "multiple contacts" with her. When she saw him approach, "she immediately pulled back, stood up straight, and waved the person on." It is not clear whether Watts spoke with defendant before he placed her under arrest. His initial testimony suggests that he did. He later testified that he arrested defendant and gave her *Miranda* warnings before having any conversation with her.[3]

---

[3] The trial court's findings do not address this point. Defendant does not contend that she was arrested and questioned before being advised of her rights. The state does not argue that Watts' initial contact with defendant was only a stop. Accordingly, we address neither question.

In any event, at some point he inquired whether she was "out working." She seeks to suppress her affirmative response to that inquiry on the ground that it was the fruit of an unlawful arrest.

Because the offense for which defendant was arrested is neither a felony nor a Class A misdemeanor, ORS 133.310(1)(j) authorizes a warrantless arrest only if the offense is committed in the officer's presence. Even assuming that the arrest occurred before defendant made any remark to Watts, we conclude that Watts had probable cause to believe that defendant was loitering to solicit prostitution. He had information from a local businessman and another police officer that a woman who was dressed like defendant had been seen loitering, getting into a car and returning to the same spot in the same car. His observations were consistent with what had been reported about defendant's appearance and location. He could rely on the reports and his own observations to form an opinion as to whether the conduct that he observed was criminal. *See State v. Pratt,* 309 Or 205, 785 P2d 350 (1990); *State v. Vanness,* 99 Or App 120, 781 P2d 391 (1989); *City of Portland v. Peterson, supra.*[4] Those reports and observations, combined with Watts' personal knowledge about defendant, gave him probable cause to believe that defendant had committed the offense of loitering to solicit prostitution in his presence. *Cf. State v. Brown,* 31 Or App 501, 570 P2d 1001 (1977) (conviction reversed; officer merely observed defendant walking in area of high prostitution and talking to known prostitute on one occasion); *City of Portland v. Miller,* 62 Or App 145, 659 P2d 980 (1983) (conviction reversed; defendant unknown to police officers). Accordingly, the arrest was valid, and the trial court properly admitted defendant's affirmative response to Watts' inquiry about whether she was "working."

Next, defendant argues that there was insufficient evidence to support her conviction and that the trial court, therefore, erred in denying her motion for a judgment of

---

[4] Defendant argues that Watts cannot rely on the reports from the officer and the businessman, because those persons were anonymous. That issue was not raised below, and we decline to address it now.

acquittal. In addition to the evidence at the suppression hearing, the trial evidence includes Watts' testimony concerning his conversation with defendant. Watts testified:

"I pulled over and got out of the car to speak to her. I asked if she was working. She says, 'Yes, I just got off the bus. You better get away from her because she hadn't done anything yet.[*sic*]'"

Defendant contends that the term "working" is ambiguous and that the court should not have considered her statement to Watts to be an admission of prostitution. Watts testified that "working" is street vernacular for prostitution and that it appeared to him from defendant's "body language" when she responded to his question and the common meaning of the word in the context in which it was used that defendant and he were using the term in the same way. A reasonable factfinder could have inferred from defendant's response that she was admitting that she was seeking to engage in prostitution.[5]

Defendant contends that a reasonable trier of fact could *not* find, beyond a reasonable doubt, that her actions manifested an *intention* to solicit prostitution. She argues, and the state agrees, that dressing like a prostitute is not sufficient to convict her. However, the additional evidence, including the officer's testimony concerning defendant's statements to him, viewed in the light most favorable to the prosecution, was sufficient to enable the trial court to find beyond a reasonable doubt that defendant's actions manifested an intention to loiter for the purpose of soliciting prostitution. The trial court did not err in denying defendant's motion for judgment of acquittal.

Affirmed.

---

[5] Defendant argues in her memorandum of additional authority that the court should not have treated the term "working" as a confession of loitering to solicit prostitution, because the usage of the term was not established pursuant to ORS 41.270. Defendant did not raise that argument below, and we decline to address it.