Argued and submitted April 17, reversed and remanded October 30, 1991

## CITY OF PORTLAND,
*Appellant,*

*v.*

## Brian W. SPANGLER,
*Respondent.*

(DA 397296; CA A65652)

819 P2d 754

Rives Kistler, Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Michael R. Sahagian, Aloha, argued the cause and filed the brief for respondent.

Before Richardson, Presiding Judge, and Joseph, Chief Judge,* and Deits, Judge.

JOSEPH, C. J.

---

* Joseph, C. J., *vice* Newman, J., deceased.

## JOSEPH, C. J.

Defendant was charged with procuring prostitution. Portland City Code § 14.24.055.[1] The state appeals from a trial court order allowing defendant's motion to suppress. ORS 138.060(3). The dispositive issue is whether the police had a reasonable suspicion for which to stop him. We conclude that they did and reverse.

In the evening of June 7, 1989, Portland Police Officer Modica of the Drug and Vice Division was on patrol along King Boulevard. He observed Denise Sundstrom standing on the sidewalk waving at cars. He knew her by name, because he had previously arrested her for soliciting prostitution. A car pulled over, Sundstrom got in and the car drove off. Within the block, the car pulled over again, and Sundstrom got out. Modica stopped the car and questioned its driver, who said that Sundstrom had asked him if he wanted a "date," that he had said no and that she then got out.

Modica saw Sundstrom return to King Boulevard and resume waving at cars. Defendant pulled his car over, she got in and they drove off. Modica followed them. They turned a corner, and Modica saw Sundstrom move across the front seat toward defendant. The car then pulled over and stopped. Modica saw Sundstrom look down at defendant's lap, and it appeared that her hands were moving up and down in the lap.[2] Modica believed that Sundstrom had engaged in loitering to solicit prostitution. He activated his car's lights and siren and pulled in behind defendant's car. When Modica approached on foot, defendant drove off. Modica returned to

---

[1] Portland City Code § 14.25.055 provides:

"(a) As used in this Section, 'prostitution' means that unlawful conduct defined in Section 14.36.065 of this Code. As used in this Section, 'prostitution procurement activity' means any conduct by any person that constitutes a substantial step in furtherance of an act of prostitution. Such activity includes, but is not limited to, lingering in or near any street or public place, repeatedly circling an area in a motor vehicle, or repeatedly beckoning to, contacting, or attempting to stop pedestrians or motor vehicle operators.

"(b) It is unlawful for any person to engage in any prostitution procurement activity with an intent to induce, entice, solicit, locate, or contact another person to commit an act of prostitution."

[2] Modica testified that Sundstrom's actions were significant, because prostitutes often attempt to identify undercover police officers by attempting spontaneously to engage them in sexual activities that they are prohibited from doing.

his car, chased defendant and stopped him 3 blocks away. After Modica arrested him and gave him *Miranda*-type warnings, defendant admitted that he had been seeking prostitution.

The court found that Sundstrom was not hitchhiking and that, when she had asked the first driver if he wanted a "date," she meant a sexual act. It also found that Modica knew from experience and training that Sundstrom was a prostitute. Still, it concluded that that knowledge, together with what Modica saw occur between Sundstrom and defendant, gave him no reasonable grounds for a suspicion that defendant was committing a crime.[3]

Modica stopped defendant by activating his siren and lights and causing defendant to stop his car. *State v. Walp,* 65 Or App 781, 784, 672 P2d 374 (1983).[4] At that time, Modica had reasonable suspicion that Sundstrom had committed a crime and that defendant was an accomplice or aider and abettor or had himself violated the ordinance. ORS 131.615(1); *see City of Portland v. Potts,* 103 Or App 548, 553, 799 P2d 168 (1990), *rev den* 311 Or 60 (1991). Modica had the authority to stop the car and make a reasonable inquiry. ORS 131.615. The court erred when it granted defendant's motion to suppress.

Reversed and remanded.

[3] The state argues that Modica had at least a reasonable suspicion that Sundstrom was engaging in loitering to solicit prostitution and that, therefore, he could stop defendant because she was in his car. Defendant does not assert that Modica had no authority to stop Sundstrom. *See City of Portland v. Peterson,* 55 Or App 537, 540 n 2, 639 P2d 638 (1982). He argues that, because there was no evidence that he was engaged in a crime, he could not be stopped.

[4] Although defendant's motion to suppress is not specific, we infer that he challenges only the legality of the first stop, not the one after he fled.